And you're Mr. Thomas, right? Yes, Your Honor. Robert Thomas, for the appellants Randy Ralston and Linda Mendiola, who are both present in the courtroom today. Okay. Do you want to reserve any time? Yes, Your Honor. I'd ask to reserve four minutes of time, if you would please. Okay. We'll try to help you, but keep your eye on the clock. Please proceed. Very much. May it please the Court. We've identified two distinct paths to reversal here. The first, grounded in fact, we asked, and the county responded that there's no override on limitations on development in the Montecito Riparian Corridor, and responded three times. That's de facto ripeness under Pactel. The second path examines the county's... But who responded? The planning director, Your Honor. Right. And does the planning director have any authority to make a final decision? Yes, he does. In this case, under that procedure, he does. We are not. The assumption that the district court made, and we think this is sort of the Achilles heel of the district court's decision, it assumed that the right procedure to ask for this type of thing is a coastal development permit. But a coastal development permit isn't available in this case. You can't apply for one that's in for a use that's inconsistent with the LCP. If you don't apply for one, how does the county even know that you're within the riparian zone? How do they know that they cannot mitigate some of the development? They know nothing except the development director has said, this is a bad idea. Because your property is in the riparian zone. I want to emphasize that. Do we know that? Do we know... If you're going off that 2006 map, it has a big warning right there on the web page. You know, you can't rely on this. The riparian zone ebbs and flows. It moves. You need really a biological study to determine specifically whether you're in that zone. First of all, we think this is a matter of pleading and not ripeness. So the complaint alleged that Ralston's property is 100% within the Montecito riparian quarter. We think that's sufficient. That's plausible because of the following. First of all, the county has a duty to create those maps and designate those properties under 7.8 of the LCP. And then we relied on the county's map, among other things, as well as the actual conditions on the ground. Counsel, let me add to this. I used to do a lot of land use work. Wonderful. I always had to file an application. There's none here. How can you say that, in this case, the county didn't respond if you didn't file an application? I mean, it's like going to court and saying, I didn't file a complaint, but you owe me. You've got to file an application. And as my colleague has pointed out, until you file the application, you don't even know what they're wanting to build. Maybe they want to build a duck pond. Who knows? But the riparian feature here involves growth of plants and so on. It changes over time. But you won't know until a permit application is filed what's even being sought. You're just speaking in the abstract. How can we give you relief in the abstract? Here's the response to that question, Your Honor. The response is, application for what? We have to look at the county's own procedures and ordinances to determine what avenues are available for us to ask the county. First of all, there's no procedure that I can tell within their ordinances to ask for some kind of zoning confirmation that, yes, indeed, my property is within the riparian zone. No, that's not what they're talking about. I don't know if that's what you wanted. But let's just say you wanted to build a big house. Yes. And you want to have a yard of a certain size. You file the application. You say, I want to build a big house right here. This is the legal description of it. This is what I want to do. This is how big the setbacks would be. And then they can determine whether it fits in the riparian area. They can then determine whether there are accommodations that you can make that will fit within the local planning arrangement and the state's requirements. I'm just puzzled as to how we can help you basically in a vacuum here. I don't know what you've asked for other than it's a law school exam. I got you that. And it's an interesting one. But you've got to have a specific request, and I don't see one. Well, that's not quite accurate, I think, Your Honor, respectfully, any more after Pactel. We need de facto ripeness. The court says you don't look at the used to be a bright line test, right? Has there been an application that the government has responded to? And I think that's the modality they're still operating under. But Pactel tells us that you could still go that way if there is that procedure available in the county's laws. And that's where we're differing because you're saying that you can't even apply. And I don't think that's right. They may say, when you apply, you've got this problem. That's when you've got then you're joined. That's when you say, no, no, that can't be right. And that's when you fight it. But you're asking for something in effect without asking for it. It's just hypothetical. And thank you, Your Honor, for your candor. I'd like the opportunity to convince you on that one. I want you to do that. Here's what the district court assumed. And I think they're assuming and perhaps the court is assuming now that they could apply for a coastal development permit. Here's why they can't. A coastal development permit by the text of the county's own laws, and it's sprinkled all over chapter, I think it's chapter 20A. It says that a CDP can only be issued for development consistent with and in conformity with the LCP. And for that, you refer here to the five uses under 7.9A. But you've got section 30,010. Yes. Which has an exception if there's a taking involved. But how do you know whether there's a taking involved unless there's a specific application? Here's why that doesn't apply to our case. Now, we've put it we've set aside in the briefs our explanation of why we think as a statutory interpretation matter that doesn't apply. I won't belabor us with that there, but let's assume that 30010 gives some authority to the county to override these draconian limits on residential development. It says it does. Well, it says it does. But then what does that tell us? It still means that the county, when it processes a CDP under its LCP, which it does, that's how you process a CDP, it must be in consistency and conformity with the LCP. 30010, by definition, is outside the LCP. Now you're in a facial challenge. Not at all, Your Honor. Because here we asked, we got a response from the planning director. You're in the riparian corridor. Was that the so-called buildability letter? It was the buildability letter, and it's also referenced in paragraphs 20. 20 and 23. 20, 23, and 25. Yes, Your Honor. Explain to me where in the local ordinance the buildability letter constitutes a final decision. It is on the county's webpage, Your Honor. I would, I think the county council will stand before you and say this is all some procedure that you cannot find in the county's ordinances. Under PACDEL, that doesn't matter. If the county offers to the public a way to approach the county and say, am I in the riparian corridor, can I build, and the county actually responds, compare this to the Mendelson case that was argued roughly a year ago where the county simply clammed up and didn't respond. But here the county actually responded. Then we went back asking for a buildability letter, denied. But why would they ever give you a buildability letter? Sorry if I can't say that right. But that has to do with getting water onto the property, and you have no permit to build on the property. It's a prerequisite to even beginning the process. It's the first step in the development process. Before they'll even consider any type of development procedure, they want to know if there's water and sewer service to the property. Right, but basically, as far as I can tell, they said you need permission from the coastal authority, coastal water district or the coastal authority, and you said, well, I can't get it, so I'm giving up. I'm not sure. Is that what happened? I'm sorry. No, I mean, basically it said, you know, this is in the zone. You've got to go get permission elsewhere, and you didn't ask for permission elsewhere. That's a separate matter, Your Honor. I mean, I think what you just said, the response was you're in the zone, and that's what we say is de facto rightness telling us that these regulations apply to us. At that point, Your Honor, you're satisfied that de facto we know the county has taken a position on what uses are allowed and what uses are not, and how do we know? By virtue of the fact that you're 100% in the zone, you're not in a buffer zone, you're not a piece of it, it's the whole thing. But, again, getting back to the reality, let's say you had applied. You actually asked for a permit, and they said, you know, the riparian area here has really changed, and no portion of what you want to build in is in the riparian zone. You'd be home free, wouldn't you, for the most part? If that were indeed the case on the ground. You can't tell because you haven't applied. That's not true, Your Honor. I'm sorry. Forgive me, Your Honor. I'm getting a little worked up in the heat of excitement. But you, as someone who has practiced land use, would know that the county, when it receives an application and its rules say this application can only be received, processed, considered, and we must issue findings that this is consistent with our whatever restrictions we have. And there's two sets of zoning restrictions that we have to look at here. First of all, on one hand, this is R1 zone, so it's residential zone. So as of right, Ralston can build a house with the ministerial approvals, all other things being considered. Right. There's a series of uses that may be allowed mostly in conjunction with a residence. The overlay district is this Montecito riparian corridor. Essentially, maybe the best way to describe it is like a conservation overlay or conservation easement to preserve the flora and fauna. And there are five allowable uses, none of which are allowed in R1 and vice versa. So there's a conflict between the two, and out of that there's no uses available. So were, and let's assume that this was a coastal development permit application. Can I ask you a quick question? Yes, sir. The Coastal Commission actually says there, and I don't know if this is in the record, though, but they say there have been five residential developments that have been permitted in the same riparian zone where your property is. First of all, outside the record, I don't know, but I will represent to the court that my understanding is all five of those are completely different situations. They were cleared, graded, grubbed, vacant parcels between homes, subject at most to a portion of them being subject to the buffer zone. So maybe there, there's something. I don't know if your property looks similar to that. It's enough that we allege that it is, Your Honor. Not that it's different completely from that. It's 100 percent in the riparian zone, stem to stern. This thing is covered in arroyo willow. But I think we're really dealing with what my colleague pointed out. You're making a facial challenge here. You're not making a real challenge in the sense of here's the permit. We tried. We were willing to do these various things. They wouldn't even talk to us. They denied it. But you didn't apply. I'll answer that question when I see my time's running out, and then if you don't mind, Your Honor, I would reserve the balance. The answer to that is no. We could have made a facial challenge, but we did not. Here, this is an as-applied challenge because when we asked the county, can we go ahead, the planning director, Your Honor, the planning director replied, no, you can't. And we're not going to override, and your property is in the riparian zone. That was the application of these limitations to our property, triggering our ability to file a lawsuit as applied. Thank you. I'd like to reserve the rest of my time. Thank you, Your Honor. Of course. Very well. So we're going to hear from, we've got two of you, and you're going first. Ms. Carroll, is that right? Yes. I'm Deputy County Counsel Lauren Carroll on behalf of the County of San Mateo. Good morning, Your Honors, and may it please the Court. Ultimately, appellants' interpretation of the final decision rule is out of step with decades of precedent. Their claim will not be ripe until they have given the county the opportunity to review a development application and apply its own regulations using its own reasonable procedures and come to a conclusion about what use may or may not be allowed on the land. The District Court correctly dismissed this case, and this Court should affirm. So I want to address a couple of points that came up here. First of all, appellants focus heavily on this idea that the county doesn't have procedures or standards for assessing their property and for applying the local coastal program to their policy or to their proposal. And this just really isn't true, and it also puts the cart before the horse. According to the complaint, the county has not determined whether and to what extent the LCPs actually apply to the property in the first place. And depending on the specifics of what appellants want to build and what the conditions are in the land, there may be no need to actually override the LCPs to allow development. And, of course, it does say throughout our regulations that any development permit granted does have to be consistent with the LCP. However, Section 30010 of the Public Resources Code is part of that LCP, and that section, as noted, allows the county to potentially grant a permit in a way that avoids a taking. So it would also potentially be consistent with the LCP because that permit would be designed to avoid as much impact on the habitat as possible while also allowing a reasonable economic use of the property. Oh, go ahead. No, please. Would you agree that, I mean, your website certainly dissuades ordinary citizens who are interested in applying for a permit from even applying. I mean, it really says if you even have an intent to seek a permit, you've got to go through these folks first, and that's exactly what happened. Your Honor, I wouldn't necessarily say that it dissuades individuals. A lawyer for the county, and the development director is saying this is a waste of your time. But the development director is not the final decision-maker here. So Pactel actually didn't move the needle in these cases. Pactel said that an applicant has to follow the county's procedures if avenues remain for the government to clarify or change its position. So the planning director might, as you indicated, give them the suggestion that this may be a bad idea, but that does not prohibit them from applying and bringing their application to the actual final decision-maker who might have a different opinion than the planning director or decide that the risk of a taking outweighs the impact on the riparian corridor and go that route. Of course, they're arguing that under 3010, you don't get to override. So can you kind of tell me a little bit about your interpretation of 3010? Absolutely, Your Honor. So Section 3010, we all know what I'm talking about here. It says that any local government acting pursuant to this division, meaning applying and implementing the Coastal Act, shall not grant or deny a permit in a way that causes a taking. So while counsel for appellants is asserting that the county has no procedure, the county actually has an obligation under Section 3010 to consider whether they're going to be granting a coastal development or denying a coastal development permit in a way that could constitute a taking. So that applies to the county because the local coastal program policies of the county are implementing the Coastal Act. So Section 3010 is part of the overall picture that the county is looking at when it's evaluating a coastal development permit. Would you comment on the facial taking issue? As I read the complaint and the fact that they had not filed an application for a permit, it seemed to me that what they're really seeking is basically a declaration that this is a facial taking just by the language itself, putting aside 3010. Would you comment on the county's view of whether or not this is a facial challenge? Yes, Your Honor. I would agree with that interpretation that this is a facial challenge because ultimately what they're doing is they're looking at the regulations themselves and applying the regulations to the property in their view and imagining that or coming to their own conclusion that the text of the regulations themselves are the final decision. And counsel for appellants say that throughout their brief, that the law itself can be the final decision. But as we know from decades of Supreme Court precedent, that this should be interpreted as a facial takings claim. And that was described most succinctly, I think, in the case in Sweden. And in that case, the applicant had applied, been rejected at the staff level, appealed their case, and then the county board of supervisors also rejected their claim. And in Sweden, the court was careful to note that the parties were not challenging the text of the regulations. And if they were, that would be a facial takings claim, and such claims are an uphill battle. If hypothetically this qualified as a facial challenge, what role, if any, would a statute of limitations play in such a claim? Yes, exactly, Your Honor. These claims, if this is facial, they would be barred by the statute of limitations because the statute of limitations on such a claim is two years. And the county's local coastal program regulations were adopted in the early 80s and last amended in 2012. So at a minimum, these claims are seven years too late. So do you have a position on whether or not this property is actually in the riparian corridor or not? No, Your Honor, I don't, because we don't know, because the requisite biological studies have not been performed. The Council for Appellants alleges that their complaint makes it clear that this is definitely 100 percent in the riparian corridor. However, as is clear in the complaint and in Council's argument, they were relying on the county map. And this county map clearly states that these are just the approximate boundaries and that they may have expanded or retracted, especially on undeveloped properties in the meantime. So the biological studies, boundary surveys, and other things of the like are necessary to determine if the property is actually in the riparian corridor. So at this point, we don't know if the property is in the riparian corridor. Is there anything in the record that indicates that you communicated with the plaintiffs the proper procedure to follow? Anything in the record, Your Honor? Yeah, to date. I mean, what seems to be happening here is the website, basically, and I agree with my colleague, Judge McShane, seems to discourage applications. The buildability letter says that's not appropriate. But at least the way I read it, it doesn't. What's in the limited record we have is these plaintiffs didn't get any advice on what to do next. Your Honor, they didn't get any advice on what to do next. That's in the record in the four corners of the complaint. In terms of the buildability letter, that is according to the county's regulations and the checklist for a coastal development permit on the county's website. It's not part of the formal process. And going back to the concept of whether the appellants were given any advice on what to do, in the regulations, it invites appellants to, or potential applicants, to have a pre-application meeting with the planning director. And so the invitation to have the planning director discuss any intent to develop in the property or in this area is consistent with that. So, as you might know. Yeah, I understand it's in the regulations. But when you have people who are approaching the government and asking, give me a letter on buildability, and says that's not appropriate, there's no, at least in the record to date, there's nothing that says, look at the regulations, here's what you should do. Which is common, generally, when you're denying someone a government permit or other accommodation. Regardless, Your Honor, that can't be considered a final decision to ripen this takings claim. In order for this claim to ripen, it has to be a final decision by a county entity that is actually able to make a final decision. So even if, as pleaded in the complaint, the planning director might have been affirmatively giving them all of the steps that are laid out, those steps are still available and appellants are welcome to apply for a development permit. And those sort of preliminary, tentative comments by the planning director, while they might be indicating this might be a bad idea, you might have some struggles here, they're not a final decision. But that's not what the complaint says. The complaint says the development director said there's really almost no way. But then if you look at the text of what the planning director actually said, the planning director says based on the information provided, and we know that this is something less than a full development application, that it would not be appropriate in his personal view, based on this limited information, to necessarily override the LCPs. So even though an appellant might be claiming that the planning director said no, the actual text of what he said that is quoted in the complaint is not a definitive no. And I want to make sure that I was intending to save five minutes for the Coastal Commission. Well, for Mr. Pei, right? Yes. Okay. Very well. Let's hear from him. Thank you, Your Honors. Is she at Pei or Pei? It's Pei. Pei. Thank you, Your Honor. Good morning, Your Honor, and may it please the Court. David Pei for the California Coastal Commission. While the district court dismissed this action without having the need to address the commission's own motion to dismiss, suffice to say petitioner's own allegations show that their claims for seeking injunctive relief against the Coastal Commission are unripe as well. Indeed, the commission only hears administrative appeals for coastal development permits, CDPs, that are approved, which, as petitioners allege, will never happen here, and thus they claim it would be futile to apply for one. So even if injunctive relief can be properly brought against the commission, petitioner's own allegations invoking futility necessarily concedes that the action it seeks to enjoin is an event that will never occur. On that basis alone, the district court's decision to dismiss as to the commission should be affirmed. This is not to say that petitioner's claims against the county should survive. They should not as well. Before I proceed further, I'd like to address any specific questions this court may have pertaining to the 11th Amendment issue raised in the commission's answering brief. Any questions about my colleague? I think none. If none, I'd like to spend the remainder of my time discussing how the takings override analysis set forth in 3010 helps to identify any potential takings claim by defining what, if any, development will be allowed and why that process should be conducted outside of and prior to the litigation process. First, the purpose of 3010 is to avoid a taking prior to issuing a decision on a permit. It is not to undo a permitting decision so as to resolve an otherwise ripe takings claim. Mr. Pai, you threw out in your briefing that there were exceptions made, there were residential permits, but I wasn't clear whether that is even in our record at all. Yeah, that's not clear to me, too, and I just looked at my answering brief and I could not find references to that. I do know, however, that in the lower court supplemental briefing was requested by the court to the county, and the county did submit examples of permits that were approved within the riparian corridor. So it may have been in reference to that. If the court is wondering if a 3010 analysis could be done through or concurrently with federal litigation, if the affected owners chooses to do so, the answer should, even in our brave new post-NIC and post-pactel world, remain a resounding and steadfast no. This is because, as the county explained, the prospect of approving or refusing a permit is still uncertain, and it remains uncertain until absent a final decision by the county as to what, if any, is there to take. Specifically, a permit decision is uncertain here because the riparian corridor is fluid. The only way to verify its boundaries is to survey the land upon a permit application, allowing the applicant and the county to go about balancing legitimate government interests with private property rights. The county's process to do so is to reasonably require its property owners to submit an application, to submit a permit application. And this is consistent with the Ninth Circuit's requirement that at least one meaningful development proposal is submitted before invoking the futility exception. That the takings override analysis is subsumed within the CDP process is not dispositive. There's no constitutional or statutory requirement that the takings override analysis be specifically codified as an ordinance or incorporated into an LCP or even separately considered apart from the permitting process. So tell me how you think the plaintiffs should have proceeded in this case. Exactly as the county suggests, to submit a coastal development permit application. And within that application, the 30,010 takings override analysis can be conducted. And there are instances in the McAllister case, in the Felgate case, in many state court decisions, interpreting the 30,010 analysis where the Coastal Commission itself, even upon hearing an appeal of a CDP that was approved, decides we're conducting our own takings override analysis and we're not going to strictly adhere to some of the policies to effectuate the Coastal Act because we have to. Do either of my colleagues have additional questions for either the county or the state? All right, very well, thank you. Mr. Thomas, you have some rebuttal time. And may it please the court again. First of all, the procedure that my friend suggests, it's not enough to have a substantive authorization. There has to be some process in which an ordinary citizen understands how to do this. And that's where this thing breaks down. There's nothing in application for a coastal development permit in the certificate of exemption or the exemptions that you can seek that says 30,010 exemption. We don't know what to submit. And most importantly, and here's, I think, the real problem that that argument raises, is first of all it's based on some sort of notion of primary jurisdiction that has not really come up in the case, but the Far Eastern case in the United States Supreme Court says that when an agency has particular expertise in figuring out some scientific or other things, then we kind of defer to that before we allow you to go to court. Well, there's nothing here. The question is, is this covered 100% in willow or royal or royal willow or isn't it? And that's a factual question that's easily within the competence of a district court to decide. We don't need the county's checkoff and approval to say, yeah, you're regulated before we come to court. And the second part about 30010, I think that is a problem, is how do we know how they're going to consider it? Now, you look at how other jurisdictions in California handle that. They adopt their own version of 30010 within their own LCPs, and then they have a procedure. We're going to look at it this way. These are the standards we're going to apply. We're going to come to a decision. You'll have so many days to apply to appeal that decision on and on and on, so a landowner knows exactly what to do. And that ties back to perhaps my final point before I wrap up, is that if they wanted to, they've tied their own hands. If they wanted to, they could have adopted a 30010 provision within their LCP. And if that was the case, we would be arguing a much different argument here. But they didn't. And so we relied on the only procedure they made available, asked the planning director, who will confirm with the county attorney. We did not once. Got three answers. That's de facto ripeness. Thank you, Your Honor. We appreciate your time. Thanks to all of counsel for your argument. We appreciate it. Case of Ralston v. County of San Mateo is submitted.
judges: THOMAS, SMITH, McShane